The Chancellor.
No money or other property was advanced by the father to James, as an advancement, in form. Whatever he let James have, he took his note or obligation for; he put it in the shape of a debt from James to him. The testimony on the part of the surviving children, even if all admissible, is of entirely too indefinite a character to establish an advancement. It-was not claimed, I think, at the bar, that proof of mere parol declarations of a father, that he had fully advanced a child, would be sufficient. See Teller, 397; 1 Atk. 407.
The counsel- for- the appellants rely, first, on the notes given by James to his father. A note given by a son to the father is not, of itself, evidence of an advancement by the father. It is evidence of indebtedness by the son. The amount of the note may be recovered back from the son, either by the father, in his life time, or by his personal representatives, after his decease; *104 but no part of an advancement can be recovered back. The very object of the father in-taking the note, should be presumed to be,- to avoid the inequality which would resultj if his personal éstaté, at his death, should be insufficient'to give to each of his other chjldren an - equal sum. It is not a gift; the father does not divest himself of .the property. This- is not opposed to the case' of Wanmaker v. Van Buskirk, in Saxton, 688 The opinion of the chancellor in that case, that the amount of the bond was an advancement, was founded on the peculiar circurastanCes': of the case.
It was contended that .the notes exhibited in this case, should be considered as advancements, because they are outlawed. If nothing appeared but the fact that these notes were found among’ the papers of the intestate after his death, and that they were all outlawed, and could not therefore be made available as debts; it might be a serious inquiry, what would be the proper presumption';- whether the presumption of payment, arising from lapse of time, or the presumption that the father omitted to collect them, or have them renewed, on the ground that he was willing the son should retain the amount as an advancement. But, in my view, it is not necessary to discuss that question in this case.- Under the admissions and acts of the intestate, it would certainly be unsafe to declare, that the whole 'amount of these notes should be considered either advancement or debt. It appears that shortly before James' went to the south, he assigned notes to his father, in part payment of what he owed him. He also gave a bond to his father for $700, and a warrant of attorney for the confession of a judgment thereon ; and judgment was entered thereon accordingly. There is no evidence that the bond was-given on a new or separate advance of moneys The transaction has the appearance of a settlement between them of the amount due from James, and the confession of a judgment for the amount. I am unwilling to consider the notes as evidence, either of advancement to James, or of debt due from him to the estate.
There can be no doubt that James, in his life time, and his estate, after his death, was indebted to his father, the intestate, in the amount of the judgment. If this debt had been released by the father, to James in his life time, it might,’ perhaps, be *105 considered an advancement s Gilbert v. Wetherell, 2 Sim. and Stu. 254. But it remained a debt from the estate of lames to his father, at the father’s death. The endorsement made by Michael. Alien on the execution, discharging the sheriff !S from all liability whatever of the execution, the defendant being dead and no further proceedings required ón the same,55 did not discharge the debt, so as to entitle James’s children to an equal seventh of the surplus, exclusivo of the amount of this judgment debt. And this discharge of the sheriff was not an advancement to James; for James was then dead,
Bor the purpose of settling’ the distribution, the amount of this judgment debt should have been added to the said surplus *, and should form a part of the distributive share of the three grandchildren who represent '«heir deceased father, James. The decree of distribution made by the orphans5 court, was made without respect to this judgment debí; and the children oí James were decreed to be entitled to an equal seventh of the surplus, though that surplus did not include the judgment debt,
I think the decree is erroneous. The orphans’ court should have added the amount of the judgment, with interest thereon to the death of Michael Allen, to the surplus found by the account of the administrator as stated; and have decreed, that one seventh of the whole sum be paid to each of the surviving children; and that the judgment against James be satisfied, and the residue of the money in the administrator’s hand, be paid to the children of James, equally among them. A decree to this effect will be made by this court-